

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| IN RE | | No. 08-19-00151-CR |
| | § | |
| THE STATE OF TEXAS, | | AN ORIGINAL PROCEEDING |
| | § | |
| Relator. | | IN MANDAMUS |
| | § | |

## CONCURRING OPINION

I join the majority opinion in part and agree with the judgment resolving this case. However, I write separately to offer the following comments.

The majority's reading of subsection (a). Subsection (a) seems to allow a defendant to request the information an expert relied on in forming his opinion, and I agree that it would appear the State could not hide behind an assertion of privilege to avoid subsection (a)'s applicability. The majority's conclusion that Article 39.14's precepts do not require the State to create information not already in existence, and also with the majority's endorsement in footnote 8 of trial judges using Rule 705 hearings as the vehicle to iron out some of the edges of discovery disputes pretrial is sound.

That said, I cannot fully join in the majority's approach in resolving this case for procedural reasons. This Court previously issued the 2013 opinion *In re State*, which held that such

information was not discoverable. *See In re State*, No. 08-12-00177-CR, 2013 WL 1846680, at *3 (Tex.App.—El Paso Apr. 30, 2013, orig. proceeding)(not designated for publication)(holding that "[n]othing in either subsection (a) or (b) authorized the trial court" to order the disclosure of information underlying an expert's opinion). That decision, which went too far in imposing discovery restrictions, nevertheless bound the parties and the trial judge at the time the discovery order was entered.

That may be why Heredia and the trial court both relied on the broader language in subsection (h) in seeking and issuing the discovery order and not on subsection (a): because subsection (h) operates independently of all other subsections by its own terms and because prior to our decision today, this Court's precedent clearly (but wrongly) stated that such information was not discoverable under subsection (a). Under our 2013 decision, the State *would* have been entitled to a writ of mandamus preventing the discovery of this information had the trial court granted the discovery under subsection (a), *see In re State*, 2013 WL 1846680, at *4-5 (granting mandamus relief in an expert witness case involving a similar request for underlying materials), and so subsection (h) remained the only available avenue to get around our 2013 decision.

The effect of today's decision is to essentially overrule the 2013 *In re State* decision, which I wholeheartedly endorse. But I am not sure if the Court has the ability to overrule a precedential decision in the procedural posture of mandamus as opposed to direct appeal, and so I will withhold judgment on that point. I am also not sure I am fully prepared to endorse the right-result, wrong-reason doctrine in the realm of mandamus review, so likewise, I will withhold judgment on that point, as well.

For me, this case is all about subsection (h), and I would resolve this case solely on the subsection (h) grounds articulated by the trial court in its order, especially because interpretation of subsection (h) and the Michael Morton Act is an open question that needs a definitive resolution.

I find that subsection (h) can and does entitle Heredia to discover the expert opinion information he sought, or, at the very least, that the State has not met the burden to obtain mandamus relief from the trial judge's order concluding that it does. My reasons follow.

### *The Michael Morton Act and Subsection (h)*

The State asserts that subsection (b) limits all other portions of Article 39.14 and makes it so that the universe of discoverable material related to expert witnesses is only the expert witness's identifying information and nothing more. I disagree with the State's reading of Article 39.14. Subsection (b) does not operate to limit subsection (a) and (h). The three provisions are independent of each other.

Article 39.14 of the Texas Code of Criminal Procedure governs criminal discovery requests generally. Following the passage of the Michael Morton Act, Article 39.14 now has three main provisions.

Subsection (a) addresses requests for production and inspection generally. It states:

[A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. . . . The rights granted to the defendant under this article do not extend to written communications between the state and an agent, representative, or employee of the state. . . .

TEX.CODE CRIM.PROC.ANN. art. 39.14(a).

3

Article 39.14(b) addresses the disclosure of expert witness identifying information. It states:

> On a party's request made not later than the 30th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin, the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. . . . [T]he disclosure must be made in writing in hard copy form or by electronic means not later than the 20th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin. . . .

TEX.CODE CRIM.PROC.ANN. art. 39.14(b).

Finally, Article 39.14(h), which was added by the Michael Morton Act, addresses the State's continuing obligation to disclose certain information to the defendants. It states:

> Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

TEX.CODE CRIM.PROC.ANN. art. 39.14(h).

When we read three provisions in context and in light of one another, we can see that each addresses a different situation and imposes different obligations on different parties at different times. Subsection (a) requires the State to produce certain nonprivileged information upon request. Subsection (b) is a pretrial housekeeping provision that places a narrow, largely administrative identity disclosure obligation on both parties that is triggered upon a timely-made request. And Subsection (h) is a substantive provision that imposes a one-way continuing burden on one party (the State) to provide evidentiary material to another party (the defendant), regardless of when the material comes into the State's possession before or during trial, and regardless of when a request is made.

4

These three provisions do not operate to limit their sister provisions, but they each address a separate situation and provide separate relief. As such, they can all be harmonized and, contrary to the State's position, each can be given full effect without negating each other. (The respective obligations, timing issues, and trigger events for each provision are represented visually in Table 1.1 below.)

I find the State's interpretation of these statutory provisions is incorrect, and subsection (h) provides a freestanding basis for discovery separate, distinct and apart from subsections (a) and (b).

|  | Article 39.14(a) | Article 39.14(b) | Article 39.14(h) |
|---|---|---|---|
| **Obligation Imposed On:** | State | Both State and defense | State only |
| **To Do What:** | Produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers . . . and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state . . . . <br><br>Exclusions:<br>• Work product of counsel for the state in the case<br>• Written communications between the state and an agent, representative, or employee of the state. | Disclose the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence | Disclose any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged |
| **At What Point:** | "[A]s soon as practicable" after receiving a timely request from the defendant | Within 30 days of trial | Continuously |
| **Motion Required?** | Yes | Yes (made upon a "party's request") | No |

Table 1.1 Comparison of the Subsections (a), (b), and (h) of Article 39.14 of the Texas Code of Criminal Procedure

### *Applicability Under these Facts*

The State argues even if subsection (h) provides a basis for discovering the information underlying an expert's opinion beyond the information in subsection (b), the information sought here is not "material" to Heredia's prosecution for the gang offense at bar. There are two problems with this argument. In the first place it appears this information *is* material to prosecution here, because, as the majority points out, this prosecution could not succeed absent testimony from the expert. *See also In re Hon*, No. 09-16-00301-CR, 2016 WL 6110797, at *1 (Tex.App.—Beaumont Oct. 19, 2016, orig. proceeding)(mem. op., not designated for publication)(lab testing procedures underlying expert's opinion were material). But in the second place, whether that information is material is a moot point for subsection (h) purposes. Subsection (h) does away with the materiality requirement entirely. *See Ex parte Martinez*, 560 S.W.3d 681, 702 (Tex.App.—San Antonio 2018, pet. ref'd)(noting that the Michael Morton Act "does not require evidence to be material or admissible for purposes of disclosure").

Heredia correctly notes while subsection (a) requires the disclosure of unprivileged items "that constitute or contain evidence *material* to any matter involved in the action," *see* TEX.CODE CRIM.PROC.ANN. art. 39.14(a)(emphasis added), subsection (h) requires the State to turn over "*any* exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that *tends to negate the guilt* of the defendant or *would tend to reduce the punishment* for the offense charged." TEX.CODE CRIM.PROC.ANN. art. 39.14(h) (emphasis added). The "tend[] to negate the guilt" and "tend to reduce the punishment" phrases define the scope of discovery here, not whether the evidence is "material" as that word is understood in subsection (a). Thus, in reviewing the scope of a subsection (h) request, the question for courts is not whether the evidence sought is necessarily material or admissible, but whether it

(1) tends to negate guilt or (2) tends to reduce punishment. *See Ex parte Martinez*, 560 S.W.3d at 702. The tendency standard, not the materiality standard, is what we must use to measure subsection (h) discovery. I think if this information meets the more stringent materiality standard, then it has met the lower tendency standard, and given the State has not contested or otherwise averred the information sought does not contain exculpatory, mitigating, or impeaching evidence,[1] I would conclude the State has not shown it is entitled to relief from the trial judge's discovery order.

### *Michael Morton Act Promotes Transparency Over Gamesmanship*

I believe this subsection (h) analysis is consistent not only with the statute's text, but with its spirit. Oral argument in this case focused on many of the practical concerns presented by such a reading of the Michael Morton Act's requirements in subsection (h), particularly the self-executing nature of subsection (h).

Criminal discovery in Texas does not work the same as civil discovery. In criminal cases, timelines are compressed, case volume is staggeringly higher, many defendants do not have the

---

[1] The majority voices a concern that it is unclear from this record whether materials the expert relied on would meet the definition of exculpatory or inculpatory evidence because the record here is undeveloped, and that the resolution of this case on subsection (a) grounds is more straightforward.

I would not foreclose the possibility that a judge could issue an order that constitutes an abuse of discretion and would be correctable on mandamus, even under the broader dictates of the Michael Morton Act, by ordering the disclosure of material that did not meet the statutory criteria. But I am less troubled by whether this information is "exculpatory" or not on this record because the State, as mandamus applicant, did not argue that the material at issue here was *not* exculpatory or impeachment evidence in its brief. The State only argued this evidence is not discoverable under *any* circumstances under our previous decision in *In re State*, and as an alternate basis, argued that the information is not material.

Therefore, for purposes of resolving this mandamus, I think it is safe to assume that the discovery information *did* meet the statutory definition for release, or at the very least that the issue of whether this information is exculpatory or impeaching is not before the Court. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 125-26, 128 (Tex.App.—El Paso 2018, no pet.)(noting that in reviewing appellate matters we are generally constrained to addressing arguments raised squarely by the parties' briefs).

resources to engage in the type of protracted litigation civil litigants do, there are few formal rules of criminal discovery, a person's freedom is potentially on the line, and the State and its prosecutors wear the white hats. Their job is not to be a civil-type advocate who must obtain a win at all costs, but to be a public servant who represents the best interests of the community at large and who ensures that justice is done. TEX.CODE CRIM.PROC.ANN. art. 2.01.

To level the playing field, our courts starting with *Brady v. Maryland* have among other things created on the State the affirmative obligation to disclose information to a defendant, rather than allowing the State to take a civil-style passive approach where information is provided to a defendant only if the defendant happens to ask the right question. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Michael Morton Act represents a continuation of this trend that privileges transparency in criminal trials. It was designed in my view to make prosecutors avoid engaging in civil-type discovery practices and to err on the side of disclosure over strategic withholding.

That is not to say the State does not have legitimate concerns about disclosing certain types of information. I understand the concern regarding the Michael Morton Act being self-executing and the concerns the State may have to disclose information that it would rather keep confidential for investigative or other purposes as part of a prosecution. But the Michael Morton Act is designed to promote disclosure, not to prevent it. If confidential or law enforcement sensitive information must be disclosed, that is a function of the State's charging decision. By charging this case under an organized crime statute rather than as a simple aggravated assault, the State put the issue of gang membership into play, which makes any material the State's expert reviewed in preparing for trial fair game and subject to disclosure. Shielding a gang expert from inquiry would make a conviction hinge solely on an expert's *ipse dixit*, and preventing a defendant from being able to

9

review the files necessary to effectively cross-examine a gang expert would hobble the defendant's ability to defend himself.

As the majority points out, there are guardrails to protect the State's interest in situations like this one. The Texas Code of Criminal Procedure criminalizes the unauthorized use of gang information obtained during discovery. TEX.CODE CRIM.PROC.ANN. art 67.103. The State acknowledged the restrictions placed on this type of information during oral argument, but asserted that even with a penalty, there is always the risk of unauthorized disclosure, which is why this Court should go a step further and find this information is beyond the reach of the Michael Morton Act despite statutory language that appears to suggest the State not only must turn it over upon request, it also has a continuing self-executing duty to turn it over even absent a request. I would not vote to endorse such a reading of the Michael Morton Act.

If the State is concerned that charging a defendant with a gang offense would create the unacceptable risk that it must disclose sensitive information its gang expert relied on in forming an opinion as to whether the defendant is a gang member, the solution is not to curtail the defendant's statutory or due process rights to prepare a defense in order to keep the State's intelligence information secret. The solution is for the State to select a charge that does not put any sort of confidential intelligence information into play at trial. Federal law enforcement strikes that balance regularly in complex, multi-defendant cases. If that means that the State must do the equivalent of convicting Al Capone for tax evasion rather than for organized crime in order to strike a balance between prosecuting a defendant and protecting its sources and methods, so be it.

**CONCLUSION**

I would hold that the Michael Morton Act requires the disclosure of this type of information, and that the State had the self-executing duty to provide any Michael Morton Act

10

information to Heredia once the State designated its expert, especially given its failure to show a proper basis for withholding the material.

With these comments, I respectfully concur in the majority's judgment.


YVONNE T. RODRIGUEZ, Justice

August 31, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Publish)